UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Timothy Bates and Cathy Bates,
        Plaintiffs/Appellants

        v.                                    Case No. 15-cv-167-SM
                                              Opinion No. 2016 DNH 026
CitiMortgage, Inc., s/b/m to
ABN AMRO Mortgage Group, Inc. and
Federal Home Loan Mortgage Corporation,
        Defendants/Appellees


**O R D E R**


        Plaintiffs, Timothy and Cathy Bates, filed an adversary

proceeding in bankruptcy court, alleging that CitiMortgage, Inc.

("Citi") and Federal Home Loan Mortgage Corp. ("Freddie Mac")

committed several violations of the discharge injunction

provisions of 11 U.S.C. § 524(a), by improperly harassing them

and/or coercing them to pay a discharged debt.  The bankruptcy

court ruled in favor of defendants on all of plaintiffs' claims,

except one.  As to that one claim, the bankruptcy court held that

Citi violated the discharge injunction by telephoning plaintiffs

with an inquiry related to homeowners' insurance on property

plaintiffs had lost to foreclosure two years earlier.  See

Bankruptcy Court Order dated Sept. 23, 2014 (document no. 1) at

33-44 (the "Liability Order").  Following a damages hearing, the

court held that plaintiffs failed to demonstrate an entitlement

to compensatory damages.  But, the court did order defendants to

pay plaintiffs $2,500 in punitive damages and roughly $6,300 in attorney's fees and expenses.  <u>See</u> Bankruptcy Court Order dated April 16, 2015 (document no. 1) at 15-32 (the "Damages Order").

In this appeal, plaintiffs assert that the bankruptcy court erred in ruling against them on one of their claims that Freddie Mac also violated the discharge injunction of 11 U.S.C. § 524(a). Plaintiff's also challenge the bankruptcy court's conclusion that they failed to prove they were entitled to an award of compensatory damages for emotional distress stemming from Citi's violation of the discharge injunction.  Finally, plaintiff's challenge - as insufficient - the bankruptcy court's award of punitive damages, attorney's fees, and expenses.

For their part, defendants do not challenge any of the bankruptcy court's holdings and move this court to affirm all aspects of that court's decisions - including the relatively modest award of punitive damages and attorney's fees.

For the reasons discussed, the challenged orders of the bankruptcy court are affirmed in all respects.

**Background**

Prior to seeking bankruptcy protection, plaintiffs obtained
a loan from Citi, which was secured by a mortgage deed to their
home in Newport, New Hampshire.  In November of 2008, plaintiffs
filed chapter 7 bankruptcy and listed Citi as a secured creditor.
They did not, however, reaffirm their mortgage debt with Citi
while in bankruptcy.  In February of 2009, Citi was granted
relief from the automatic stay (and, therefore, was no longer
precluded from foreclosing on plaintiffs' residence).  On April
2, 2009, plaintiffs received a discharge, notice of which was
sent to Citi.  So, while plaintiffs were no longer personally
obligated on the debt to Citi (since that personal obligation had
been discharged in bankruptcy), Citi retained the right to
foreclose upon the collateral that had been pledged to secure
repayment of that loan: plaintiffs' residence.

After their bankruptcy case was closed, plaintiffs received
a notice of foreclosure.  In an effort to keep their home,
plaintiffs negotiated a "loan modification" agreement with Citi
in November of 2009.  That agreement specifically provided that
it did not affect the bankruptcy discharge of plaintiffs'
personal liability on the original debt to Citi.  Plaintiffs made
payments under that agreement until some point in 2010.  After
payments stopped, Citi began foreclosure proceedings and, on

3

April 25, 2011, it foreclosed on plaintiffs' home.  Plaintiffs
moved out of their home in October of 2011.


    Approximately three months later, in January of 2012,
Freddie Mac sent to each plaintiff an IRS Form 1099-A.  That form
provided that, "certain lenders who acquire an interest in
property that was security for a loan . . . . <u>must provide you
with this statement</u>." (emphasis supplied).  Here, that obligation
was triggered by the foreclosure on plaintiffs' home.  The Form
1099-A informed plaintiffs that they may (or may not) have either
"reportable income or loss because of such acquisition."  It also
reported the unpaid balance on the loan for which plaintiffs were
initially personally liable, and the fair market value of the
collateral that was sold to pay down that debt (i.e., plaintiffs'
home).  The Form 1099-A informed plaintiffs that the difference -
representing the amount of the debt that was discharged,
forgiven, cancelled, or deemed uncollectible - could, under
certain circumstances, be treated as taxable income.
Accordingly, the Form 1099-A advised plaintiffs to "[p]lease
consult with your tax advisor or the Internal Revenue Service for
any tax-related questions."


    In short, that IRS form constituted a notice that Freddie
Mac was required to provide to plaintiffs following the

foreclosure upon their home, and it merely notified them that there could be tax consequences arising from that event.  It was plainly not an effort by Freddie Mac to "collect" any debt from plaintiffs.  And, merely providing notice to plaintiffs hardly seemed to impose any tax liability upon them.   Nevertheless, plaintiffs said they believed Freddie Mac's issuance of that form violated the discharge injunction because Box 5 on the form was checked.  That box provides, "If checked, the borrower was personally liable for repayment of the debt."  According to plaintiffs, that was inaccurate, since their personal obligation to repay that debt had been discharged in bankruptcy.

In May of 2013, plaintiffs moved to reopen their bankruptcy case so they could file a complaint seeking damages arising out of violations of the discharge injunction allegedly committed by Citi and Freddie Mac.  Soon thereafter, in June of 2013, one of the plaintiffs, Mr. Bates, answered an automated telephone call from Citi, with a recorded message that stated:

> According to our records we have been unable to obtain current insurance information.  This information is required based on the terms of your mortgage agreement. Please provide your insurance carrier and policy information to us.

Damages Order at 3.  The bankruptcy court noted that, "[c]ontrary to the impression left by the summary judgment record, Mr. Bates

acknowledged at trial that there was no back and forth discussion
with any Citi representative during the course of the [recorded]
phone [message].  Citi did not demand that the [plaintiffs] go
out and buy insurance if they did not already have it; however,
Mr. Bates interpreted the phone call to mean that the
[plaintiffs] were required to show that they had insurance on
their former home." Damages Order at 3-4.  Citi explained that
the phone call, with its pre-recorded message, was placed to
plaintiffs in error - Citi obviously had no interest in verifying
that plaintiffs were maintaining homeowners' insurance on a
property that they lost to foreclosure two years earlier and in
which Citi no longer held a security interest.  Still, plaintiffs
testified that they felt harassed, suffered emotional distress,
and experienced marital difficulties as a result of having
received that call.

     In their complaint against Citi and Freddie Mac, plaintiffs
advanced six claims, each of which alleged a separate violation
of the discharge injunction set forth in 11 U.S.C. § 524(a)(2).
The bankruptcy court entered summary judgment in favor of Citi
and Freddie Mac on all of plaintiffs' claims except the one
mentioned earlier: that relating to the automated telephone call
Citi placed to plaintiffs in June of 2013.  The court concluded
(somewhat generously to plaintiffs) that Citi's pre-recorded

telephone call constituted a violation of the discharge injunction's prohibition against attempting "to collect, recover or offset any [discharged] debt as a personal liability of the debtor."  11 U.S.C. § 524(a)(2).

Following a hearing on damages, the court held that plaintiffs had failed to show that they suffered any emotional distress damages as a consequence of Citi's telephone call.  It did, however, order Citi to pay $2,500.00 in punitive damages as a sanction, reasoning that it was adequate in amount to "act as a deterrent and motivate Citi to ensure that these types of violations do not occur in the future."  Damages Order at 17. Finally, the court held that, given plaintiffs' quite limited success, an award of $6,100.00 in attorney's fees and $179.47 in expenses was reasonable and warranted.

### Standard of Review

In reviewing a final judgment of the bankruptcy court, this court must "scrutinize that court's findings of fact for clear error, and afford de novo review to its conclusions of law." Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco Int'l), 132 F.3d 104, 107 (1st Cir. 1997).  See also Palmacci v. Umpierrez, 121 F.3d 781, 785 (1st Cir. 1997).  The bankruptcy court's decision to award damages, costs, and fees is subject to

the deferential "abuse of discretion" standard of review.   See, e.g., Prebor v. Collins (In re I Don't Trust), 143 F.3d 1, 3 (1st Cir. 1998).


## Discussion

To resolve plaintiffs' appeal of the bankruptcy court's decisions, this court must address four distinct issues:

1.  Whether the bankruptcy court erred in concluding that Freddie Mac did not violate the discharge injunction by mailing to each plaintiff an IRS Form 1099-A (as required by law), which stated that plaintiffs were "personally liable for repayment of the debt."

2.  Whether the bankruptcy court abused its discretion when it declined to award plaintiffs emotional distress damages.

3.  Whether the bankruptcy court abused its discretion in determining the amount of attorney's fees to which plaintiffs were entitled.

4.  Whether the bankruptcy court abused its discretion in determining the amount of punitive damages that were appropriate under the circumstances.

I.   The Discharge Injunction.

The first issue involves the bankruptcy court's interpretation and application of the discharge injunction set forth in 11 U.S.C. § 524(a)(2).  That section of the Bankruptcy Code provides that a discharge in bankruptcy:

> operates as an injunction against the commencement or
> continuation of an action, the employment of process,
> or an act, <u>to collect, recover or offset</u> any such debt
> as a personal liability of the debtor, whether or not
> discharge of such debt is waived.

11 U.S.C. § 524(a)(2) (emphasis supplied).  The Bankruptcy

Appellate Panel of the First Circuit recently explained the

discharge injunction as follows:

> The discharge injunction is like a permanent extension
> of the automatic stay under § 362(a) of the Bankruptcy
> Code and thus, includes <u>all types of collection</u>
> <u>activity</u> such as letters, phone calls, threats of
> criminal proceedings or other adverse actions brought
> about <u>with the purpose of debt repayment</u>.  The
> discharge injunction, however, <u>does not prohibit every</u>
> <u>communication between a creditor and debtor</u> - only
> those designed to collect, recover or offset any such
> debt as a personal liability of the debtor.

<u>Best v. Nationstar Mortgage LLC (In re Best)</u>, 540 B.R. 1, 9

(B.A.P. 1st Cir. 2015) (emphasis supplied) (citations and

internal punctuation omitted).  <u>See also</u> <u>Bessette v. Avco Fin.</u>

<u>Servs.</u>, 230 F.3d 439, 444 (1st Cir. 2000).


As the bankruptcy court properly noted, to prevail on their

assertion that Citi violated the discharge injunction by sending

the Form 1099-A, plaintiffs bore the burden to establish that

Citi: (1) had notice of their discharge; (2) intended the actions

which constituted the alleged violation; and (3) acted in a way

that improperly coerced or harassed plaintiffs.  <u>See</u> <u>Lumb v.</u>

Cimenian (In re Lumb), 401 B.R. 1, 6 (B.A.P. 1st Cir. 2009);

Pratt v. GMAC (In re Pratt), 462 F.3d 14, 17 (1st Cir. 2006).

See also In re Best, 540 B.R. at 9 ("The burden of proof is on

the former debtor to establish by clear and convincing evidence

that the creditor violated the post-discharge injunction.").  To

show that a creditor improperly attempted to "coerce" a debtor to

pay a discharged debt, the debtor must demonstrate that the

creditor threatened "immediate action," or that its conduct was

"tantamount to a threat."  See Jamo v. Katahdin Fed. Credit Union

(In re Jamo), 283 F.3d 392, 402 (1st Cir. 2002).


    As the bankruptcy court properly concluded, Freddie Mac's

conduct fell well short of that which might plausibly be viewed

as violative of the discharge injunction.  Plaintiffs make much

of the fact that the information on the Form 1099-A was, in their

view, inaccurate.  But, even if that were the case, the mere

issuance of the Form 1099-A did not impose any tax liability on

plaintiffs.  The cases on which plaintiffs rely - suggesting that

reporting erroneous information to a credit agency in an effort

to force a debtor to repay a discharged debt may violate the

discharge injunction - are plainly distinguishable.  In those

cases, the creditor implied (by supplying erroneous information

to a credit reporting agency) that the debtor had not repaid a

loan that it was required to repay - a representation that could,

10

under certain circumstances, be viewed as a coercive effort to collect the discharged debt.  See, e.g., Russell v. Chase Bank USA, NA (In re Russell), 378 B.R. 735, 741-42 (Bankr. E.D.N.Y. 2007) (observing that "reporting a debt can be considered an act sufficient to violate the discharge injunction, if the act of reporting a debt was undertaken for the specific purpose of coercing the debtor into paying the debt.") (emphasis supplied) (citation omitted).

That was not the case here.  There is no suggestion in the record that Citi sought or attempted to collect the discharged debt, and nothing in the record could possibly give rise to a reasonable inference that Citi did so.  The Forms 1099-A - even if, as plaintiffs allege, they were incorrect - did not impose or seek to impose any tax liability on plaintiffs, or to "collect" anything.  Plaintiffs counsel was plainly aware of that fact. Had plaintiffs contacted her, or had they read the IRS materials referenced in the Forms 1099-A, they could have saved themselves needless worry and anxiety.  But, the fact that plaintiffs misinterpreted the import of those forms cannot somehow transform Freddie Mac's legitimate conduct into a violation of the discharge injunction.  The bankruptcy court properly so found.

For the foregoing reasons, as well as those set forth in
defendants' brief, the bankruptcy court properly concluded that
Freddie Mac did not violate § 524(a) when it sent the Forms 1099-
A to plaintiffs.

II.   <u>Damages and Attorney's Fees</u>.

As the bankruptcy court fully understood, it is empowered to
"invoke § 105 to enforce the discharge injunction imposed by
§ 524 and order damages . . . . if the merits so require."
<u>Bessette</u>, 230 F.3d at 445.  Here, the only violation of the
discharge injunction the bankruptcy court found (a finding not
challenged on appeal) relates to the pre-recorded telephone call
from Citi.  And, a thorough review of the record reveals that the
bankruptcy court acted well within its discretion in concluding
that plaintiffs failed to demonstrate that they suffered any
compensable harm as a result of that telephone call.  <u>See
generally</u> Damages Order.  <u>See also</u> Transcript of Damages Hearing
(document no. 8-4) at 27-147.

Similarly, the bankruptcy court acted within its discretion
in ordering Citi to pay $2,500 in punitive damages, as a sanction
for having placed that telephone call to plaintiffs.  The record
suggests that call was placed in error and it caused plaintiffs
no harm.  And, notwithstanding the bankruptcy court's conclusion

12

to the contrary, there is no evidence in this record even
remotely suggesting that the call was intended to coerce
plaintiffs into paying a discharged debt.  The relatively modest
sanction ordered by the bankruptcy court was, under the
circumstances, and given its legal conclusions, entirely
appropriate.  Indeed, had defendants challenged the bankruptcy
court's finding on appeal they may well have obtained a reversal.

     Finally, plaintiffs challenge the bankruptcy court's
decision to award them only $6,100 in attorney's fees, and
$179.47 in expenses.  This court will set aside the bankruptcy
court's award, "only if it clearly appears that the trial court
ignored a factor deserving significant weight, relied upon an
improper factor, or evaluated all the proper factors (and no
improper ones), but made a serious mistake in weighing them."
Cent. Pension Fund of the Int'l Union of Operating Engineers and
Participating Employers v. Ray Haluch Gravel Co., 745 F.3d 1, 4
(1st Cir. 2014).  That standard of review is highly deferential.
See Id.

     The court need not discuss that aspect of plaintiffs' appeal
at length.  It is thoroughly and persuasively discussed in
defendants' brief.  It is sufficient to note that the bankruptcy
court employed the appropriate analysis, thoroughly explained its

13

reasoning, applied a reasonable discount in light of plaintiffs'
very limited (and questionable) success, and reached a conclusion
that is eminently reasonable and soundly based on the record.  As
the Court of Appeals for the First Circuit has observed:

> There is no requirement that a bankruptcy court, in
> explaining a fee award, be precise to the point of
> pedantry.  Instead, the explanation need only be
> sufficiently detailed to allow a reviewing court to
> ascertain the trial court's thought processes and glean
> the basis for its award.

Berliner v. Pappalardo (In re Sullivan), 674 F.3d 65, 71 (1st
Cir. 2012) (citation omitted).  Here, as in Berliner:

> The reasoning advanced by the bankruptcy court in this
> case clears that hurdle.  The court stated that the
> appellant's hourly rates were reasonable but that,
> given the banal nature of the case, the hours claimed
> were excessive – and it adequately explained why it had
> come to that conclusion.  At the bottom line, the
> court, based on its extensive experience with similar
> cases, determined that the appellant could have
> properly represented the debtors' interests while
> consuming far fewer than the [number of] billable hours
> claimed.  No more was exigible.

Id.


The bankruptcy court's decision to award plaintiffs
approximately $6,300 in attorney's fees and expenses did not
constitute an abuse of discretion, and, indeed, appears generous
in context.

14

## Conclusion

For the foregoing reasons, as well as those set forth in defendants' brief (document no. 11), the Final Judgment and Order of the bankruptcy court dated April 16, 2015 (incorporating its orders of September 23, 2014, and April 16, 2015) is affirmed in all respects.

The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

February 10, 2016

cc:  Terrie L. Harman, Esq.
     Andrea Lasker, Esq.
     David D. Christensen, Esq.
     Gregory N. Blase, Esq.
     Victor W. Dahar, Esq.
     Geraldine L. Karonis, U.S. Trustee

15